IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

————————————

NOS.  23-1115
      23-1116
      23-1138
      23-1139          UNITED STATES OF AMERICA,
                       APPELLEE/CROSS-APPELLANT

                              v.

                DAVID DEQUATTRO; CEDRIC CROMWELL,
               DEFENDANTS-APPELLANTS/CROSS-APPELLEES

                       ————————————

             ON APPEAL FROM A JUDGMENT IN A CRIMINAL CASE,
            ENTERED IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS

                       ————————————

               REPLY BRIEF FOR THE UNITED STATES

                       ————————————

                       JOSHUA S. LEVY
                       ACTING UNITED STATES ATTORNEY

                       KAREN L. EISENSTADT
                       ASSISTANT U.S. ATTORNEY
                       JOHN JOSEPH MOAKLEY U.S. COURTHOUSE
                       1 COURTHOUSE WAY, SUITE 9200
                       BOSTON, MASSACHUSETTS 02210
                       (617) 748-3412

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................... ii

I.     THE COURT SHOULD REVERSE THE JUDGMENT OF ACQUITTAL ON CROMWELL'S HOBBS ACT CONVICTIONS ............2

     A.    Tribal Government Officials, Like Other Government Officials, Can Act "Under Color of Official Right" .............................................2

     B.    The Evidence Was Sufficient to Establish a Quid Pro Quo Under the Hobbs Act ......................................................................................8

II.    THE COURT SHOULD REVERSE THE DISTRICT COURT'S RULING THAT TRIBAL OFFICIALS ARE NOT "PUBLIC OFFICIAL[S]" UNDER USSG § 2C1.1 ........................................................14

     A.    Two Procedural Matters .....................................................................14

     B.    Defendants' Asserted Alternative Grounds for Affirming the District Court's Sentencing Rulings Are Unpersuasive......................16

CERTIFICATE OF COMPLIANCE.......................................................22

CERTIFICATE OF SERVICE ...............................................................23

# TABLE OF AUTHORITIES

## CASES

*Carcieri v. Salazar,*
   555 U.S. 379 (2009) ..................................................................4

*Evans v. United States,*
   504 U.S. 255 (1992) ........................................................ 3, 6, 12

*Griffin v. United States,*
   502 U.S. 46 (1991) ..................................................................11

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.,*
   779 F.3d 34 (1st Cir. 2015) ...................................................15

*Jackson v. Virginia,*
   443 U.S. 307 (1979) ...............................................................11

*Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*
   599 U.S. 382 (2023) ...........................................................7, 17

*McCormick v. United States,*
   500 U.S. 257 (1991) ........................................................... 9-12

*McDonnell v. United States,*
   579 U.S. 550 (2016) ......................................................... 12-13

*Musacchio v. United States,*
   577 U.S. 237 (2016) ..................................................... 9-10, 12

*Muscarello v. United States,*
   524 U.S. 125 (1998) .................................................................3

*Pasquantino v. United States,*
   544 U.S. 349 (2005) .................................................................6

*Puerto Rico v. Sanchez Valle,*
   579 U.S. 59 (2016) ..................................................................8

*Pulsifer v. United States,*
   144 S. Ct. 718, 2024 WL 1120879 (U.S. Mar. 15, 2024) ................................2, 16

*Sparkle Hill, Inc. v. Interstate Mat Corp.*,
  788 F.3d 25 (1st Cir. 2015) ...................................................................15

*Stinson v. United States*,
  508 U.S. 36 (1993) .............................................................................17

*Stirone v. United States*,
  361 U.S. 212 (1960) .............................................................................4

*United States v. Ahlers*,
  305 F.3d 54 (1st Cir. 2002) ..................................................................5

*United States v. Ahmed*,
  51 F.4th 12 (1st Cir. 2022) .................................................................19

*United States v. Alphas*,
  785 F.3d 775 (1st Cir. 2015) ..............................................................19

*United States v. Booker*,
  644 F.3d 12 (1st Cir. 2011) ..................................................................3

*United States v. Boots*,
  80 F.3d 580 (1st Cir. 1996), *abrogated on other grounds by*
  *Pasquantino v. United States*, 544 U.S. 349 (2005)............................6

*United States v. Carmona*,
  688 F. App'x 31 (1st Cir. 2017) .........................................................20

*United States v. Coleman*,
  854 F.3d 81 (1st Cir. 2017) ................................................................15

*United States v. Culbert*,
  435 U.S. 371 (1978) .............................................................................4

*United States v. D'Amico*,
  496 F.3d 95 (1st Cir. 2007), *judgment vacated*, 552 U.S. 1173 (2008),
  *and relevant part of opinion reinstated*,
  *United States v. D'Amico*, No. 05-1468 (1st Cir. June 17, 2008) ......12

*United States v. George*,
  886 F.3d 31 (1st Cir. 2018) ..................................................................1

*United States v. Godin*,
    534 F.3d 51 (1st Cir. 2008) .................................................................3

*United States v. Hathaway*,
    534 F.2d 386 (1st Cir. 1976) ............................................................ 3-4

*United States v. Luna-Diaz*,
    222 F.3d 1 (1st Cir. 2000) .................................................................15

*United States v. McGhee*,
    651 F.3d 153 (1st Cir. 2011) ...........................................................19

*United States v. Ouellette*,
    985 F.3d 107 (1st Cir. 2021) ...........................................................19

*United States v. Soto-Rivera*,
    811 F.3d 53 (1st Cir. 2016) .............................................................17

*United States v. Turner*,
    684 F.3d 244 (1st Cir. 2012) ........................................................9, 12

*United States v. Vidal-Reyes*,
    562 F.3d 43 (1st Cir. 2009) ............................................................ 3-4

*Warmenhoven v. NetApp, Inc.*,
    13 F.4th 717 (9th Cir. 2021) ...........................................................15

## STATUTES

1 U.S.C. § 1 .............................................................................................6

18 U.S.C. § 201 ................................................................................... 5-6

18 U.S.C. § 201(a) ..................................................................................6

18 U.S.C. § 666 ...................................................................... 4, 8-9, 13

18 U.S.C. § 666(a) ...............................................................................14

18 U.S.C. § 1951(a) ................................................................................3

18 U.S.C. § 1951(b)(2) ...........................................................................3

18 U.S.C. § 3553 ................................................................ 16, 20

18 U.S.C. § 3553(a) ....................................................................20

**SENTENCING GUIDELINES**

USSG § 2B4.1 cmt. n.1 ................................................................18

USSG § 2C1.1 ......................................................... 1, 14, 16-18

USSG § 2C1.1(b)(3) ............................................................ 18, 20

USSG § 2C1.1 cmt. n.1(E)................................................................17

**OTHER AUTHORITIES**

Black's Law Dictionary (11th ed. 2019) ......................................................7

The government explained in its principal brief why the district court's "sovereign immunity" reasoning cannot be sustained either as to the court's judgment of acquittal on Cromwell's Hobbs Act convictions or its ruling that tribal officials are not "public officials" under USSG § 2C1.1. [G.Br.75-86].[1] Though Defendants do not concede the point, they make no effort to defend the district court's logic either. *See infra* notes 2 and 12. Cromwell also has not argued that applying the Hobbs Act to him would infringe any protected rights of the Tribe or rights integral to self-government. [*See* G.Br.82-83]. The government will therefore rest on its principal brief regarding why the court's sovereign immunity analysis was wrong.

Defendants have instead responded to the government's cross-appeal by urging this Court to affirm the district court's erroneous rulings on various alternative grounds. *See United States v. George*, 886 F.3d 31, 39 (1st Cir. 2018) ("[The Court is] at liberty to affirm a district court's judgment on any ground made manifest by the record, whether or not that particular ground was raised below."). For the reasons stated below, these alternative grounds are meritless and do not support affirmance.

---

[1] Citations are as follows: "[C.Resp.Br._]" is Cromwell's Response and Reply Brief; "[D.Resp.Br._]" is DeQuattro's Response and Reply Brief; "[G.Br._]" is the government's Principal and Response Brief; and "[JA._]" is the Joint Appendix.

# I. THE COURT SHOULD REVERSE THE JUDGMENT OF ACQUITTAL ON CROMWELL'S HOBBS ACT CONVICTIONS

## A. Tribal Government Officials, Like Other Government Officials, Can Act "Under Color of Official Right"

Cromwell's first alternative argument in support of the district court's judgment of acquittal is that under the "rule of lenity," the Court must identify some "*affirmative* indication" that tribal officials were among those who could act "under color of official right" at common law, or else the Hobbs Act cannot apply to him. [C.Resp.Br.33-42].[2]

Cromwell's analysis is backwards. The rule of lenity cannot be used *ex ante* to create ambiguity where none exists; rather, lenity can have a "role . . . to play" only *after* the Court finds the ordinary process of statutory interpretation leaves the statute "genuinely ambiguous." *Pulsifer v. United States*, 144 S. Ct. 718, 2024 WL 1120879 at *14 (U.S. Mar. 15, 2024) (finding safety-valve statute not "genuinely

---

[2] Cromwell claims the government misframed the Hobbs Act issue in its principal brief, but he is incorrect. [*Compare* C.Resp.Br.34, *with* G.Br.76-84 (discussing extortion "under color of official right," "tribal officials," and the "analogous situation" of "state officials")]. It is Cromwell who has reframed the issue on appeal into something that bears no resemblance to the district court's reasoning—perhaps to mask the fact that he is requesting affirmance on a ground the court explicitly *rejected*. [*See* JA.2062 ("[Y]ou're making this Manichean distinction between public and Indian sovereign, and I would suggest that Indian sovereign means a special kind of public.")]. Though the court's rulings were premised on tribal sovereign immunity [JA.2036-39, 2066], Cromwell mentions "sovereign immunity" only once in his responsive brief, and makes no arguments about it. [C.Resp.Br.34].

ambiguous" for lenity purposes even though it has "two grammatically permissible readings"); *United States v. Booker*, 644 F.3d 12, 21 (1st Cir. 2011) (rejecting lenity argument that "presupposes an ambiguity that has no basis in the statute's text"). Because the Hobbs Act is not ambiguous—much less "grievously ambiguous," *Muscarello v. United States*, 524 U.S. 125, 138 (1998)—lenity has no role to play here.

Statutory interpretation begins with the text, and if the "meaning of the text is unambiguous," ends there too. *United States v. Vidal-Reyes*, 562 F.3d 43, 50 (1st Cir. 2009) (quoting *United States v. Godin*, 534 F.3d 51, 56 (1st Cir. 2008)). The text of the Hobbs Act states that "[w]hoever in any way or degree obstructs, delays, or affects commerce . . . by . . . extortion . . . under color of official right" commits a crime. 18 U.S.C. § 1951(a), (b)(2). Because there is no clear-statement rule for tribal officials, as explained in the government's principal brief [G.Br.75-84], this language unambiguously covers *any person* who commits the stated crime. As for who can commit the stated crime, the Supreme Court and this Court have already interpreted the phrase "extortion . . . under color of official right"—with due regard to its common-law origins—as meaning extortion by a "public official" through his role as such. *See Evans v. United States*, 504 U.S. 255, 264-66 (1992) (contrasting a "public officeholder" with a "private individual"); *United States v. Hathaway*, 534 F.2d 386, 393 (1st Cir. 1976) (acting "under color of official right" refers to "misuse

of public office"). Thus, the Hobbs Act, interpreted in light of binding caselaw, is also unambiguous about who is capable of committing extortion under color of official right: government officials, of which Cromwell was one.

As this interpretation is neither inconsistent with any other part of the statute nor absurd, and it accords with Congress's broad purpose in enacting the Hobbs Act, that should end the analysis, and the Court should "apply the statute according to its terms." *See Vidal-Reyes*, 562 F.3d at 50 (quoting *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009)). *Cf. United States v. Culbert*, 435 U.S. 371, 373 (1978) (stating that the Hobbs Act "'manifest[s] . . . a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence,'" and observing that the statute's "sweep[ing]" language "do[es] not lend [itself] to restrictive interpretation" (quoting *Stirone v. United States*, 361 U.S. 212, 215 (1960))).[3]

---

[3] Though Cromwell argues the absence of any appellate decision applying the Hobbs Act to a tribal official is a reason to conclude it does not apply [C.Resp.Br.40-41], the dearth of caselaw in this situation is not particularly meaningful. Given the level of federal support for tribes, nearly every tribal extortion case can also be charged under § 666 as federal programs bribery, making the Hobbs Act often an unnecessary prosecutorial tool in the tribal context. [*See, e.g.*, G.Br.36-37, 43 (citing § 666 prosecutions involving tribal officials)]. The government did identify to the district court a Hobbs Act prosecution of a tribal official in the District of Utah, *see United States v. Blackhair*, No. 18-cr-00016 (D. Utah), but that case terminated in a plea with no appeal. [JA.2158, 2218-19].

Given that the statute is clear, there is no need to look further into the history of extortion under color of official right, but in any event, that history does not support Cromwell's cause. As noted above, Cromwell is incorrect that the "rule of lenity" requires this Court to seek an "*affirmative* indication" in the common law that tribal officials were among those who could act "under color of official right"; because Cromwell has yet to identify any ambiguity in the statute, lenity is not "in[] play." *See United States v. Ahlers*, 305 F.3d 54, 62 (1st Cir. 2002) ("It is only when no reasonably clear meaning can be gleaned from the text of a statute, leaving courts to guess at what Congress intended, that the rule of lenity comes into play."). Rather, to the extent there is any question, it would be whether there is any "*affirmative* indication" in the common law that tribal officials *could not* act "under color of official right," such that the Court could potentially deem that phrase "ambiguous" on the issue. The answer is no. Cromwell points to no such indication, and the government is aware of none. If anything, the fact that "extortion under color of official right" originated in English common law but was then applied, seemingly without difficulty, to this country's very different political structures suggests the concept is as straightforward as it sounds—any officeholder of any governmental structure can act "under color of official right." [*Cf.* C.Resp.Br.39].

Cromwell's stated "reasons to doubt" this conclusion are unconvincing. [C.Resp.Br.37-41]. It is not probative that 18 U.S.C. § 201 and the Model Penal

Code bribery provision (which is a model for state laws) focus on the officials of "the polity being regulated." [C.Resp.Br.38]. Section 201 is directed solely at federal officials because *it says so*. *See* § 201(a) (defining the term "public official" for "the purpose of this section" as limited to only federal officials). The Hobbs Act does not state any comparable limitation—or any limitation at all—on its use of the term "official." *Cf.* 1 U.S.C. § 1 ("In determining the meaning of any Act of Congress, unless the context indicates otherwise[,] . . . 'officer' includes any person authorized by law to perform the duties of the office[.]"). And it makes sense that *state* laws against official bribery would target state or local officials, rather than federal officials or officials of other states.[4] The Hobbs Act, by contrast, is a federal statute that indisputably applies to state and local officials, so there is no question Congress meant through the Hobbs Act to reach beyond the federal polity. [G.Br.79-80 (listing Hobbs Act prosecutions of state officials)]. *See Evans*, 504 U.S. 255 (affirming conviction of county official).

---

[4] Cromwell's footnote discussing this Court's opinion in *United States v. Boots* explains why *Boots* does not undermine his argument that state bribery statutes typically regulate state officials. [C.Resp.Br.38 n.10]. *See* 80 F.3d 580 (1st Cir. 1996), *abrogated on other grounds by Pasquantino v. United States*, 544 U.S. 349 (2005). As Cromwell's argument is unhelpful for the reasons stated above, it matters little that *Boots* does not undermine it. The government relied in its principal brief on a different portion of *Boots* that did not pertain to any state statute but only the federal wire fraud and honest services fraud statutes. [G.Br.82 (discussing *Boots*, 80 F.3d at 592-94)].

Cromwell's claim that a Native American tribe is inherently not a "public" and thus can have no "public officials" is unsupported and contrary to the plain meaning of those terms.[5] [C.Resp.Br.39]. Black's Law Dictionary, in usages dating back to the 16th and 14th centuries, respectively, defines the noun "public" as "[t]he people of a country or community as a whole," and defines the adjective "public" as "[o]f, relating to, or involving an entire community, state, or country." *Public*, Black's Law Dictionary (11th ed. 2019). A tribe is a "community as a whole," so it is a "public." Moreover, because the Supreme Court has said that federally recognized tribes are "indisputably governments," a tribe can have governmental "officials," who are thereby "public officials." *See Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 392-93 (2023) (stating that tribal governments are "indisputably governments" that "exercise uniquely governmental functions," such as the "power to make their own substantive law in internal matters, and to enforce that law in their own forums").

Cromwell attempts to separate tribal communities from other polities on the ground that tribes encompass only a subset of the "public at large." [C.Resp.Br.39]. The same is true of state and municipal communities, though, and as noted above, the Hobbs Act applies to *their* government officials. He also argues that tribes are

---

[5] The word "public" does not appear in the Hobbs Act, but as Cromwell notes, it appears frequently in the caselaw as a description of the type of "official" targeted by the statute. [C.Resp.Br.35-36].

"determined by ancestral lineage" rather than "citizenship." [C.Resp.Br.39]. This characterization is misleading: the Constitution of the Mashpee Wampanoag sets forth explicit requirements for becoming an "enrolled member" of the Tribe, and "lineage" is only one aspect of it. [JA.1423-24]. But in any case, Cromwell fails to explain why the point matters. Because a federally recognized tribe is a sovereign (which is not even true of a municipality), it cannot reasonably be viewed as anything other than a polity, no matter how it is composed. *Cf. Puerto Rico v. Sanchez Valle*, 579 U.S. 59, 70-71 (2016) (noting that although "Indian tribes . . . count as separate sovereigns under the Double Jeopardy Clause," the Supreme Court "has held that a municipality cannot qualify as a sovereign distinct from a State").

Cromwell's final argument, based on § 666, that where Congress wants to include tribal officials within a statute, it does so "explicitly" [C.Resp.Br.40 & n.11] was similarly part of the district court's logic in concluding, erroneously, that there is a clear-statement rule for tribal officials. [JA.2036]. As the government explained in its principal brief, that logic is wrong because it misapprehends the reasoning behind Congress's amendment of § 666, which was tied to the specific wording of that statute and thus has no bearing on the differently worded Hobbs Act. [G.Br.80].

B.    **The Evidence Was Sufficient to Establish a Quid Pro Quo Under the Hobbs Act**

As a second alternative ground for affirming the judgment of acquittal, Cromwell contends the trial evidence was insufficient to establish a "quid pro quo"

8

under the Hobbs Act.  [C.Resp.Br.42-49].  He incorporates by reference his arguments in support of his analogous claim regarding his § 666 convictions [C.Resp.Br.46], and the government herein incorporates by reference its responses to those arguments.  [G.Br.20-38].

As the Hobbs Act and § 666 are different statutes, though, the government additionally states the following regarding the elements needed to prove a Hobbs Act violation, *i.e.*, that "a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts." *United States v. Turner*, 684 F.3d 244, 255 (1st Cir. 2012) (cleaned up).[6]

First, Cromwell is wrong that the heightened standard for a quid pro quo based on a campaign contribution, as set forth in *McCormick v. United States*, 500 U.S. 257 (1991), applies to this Court's review of his Hobbs Act convictions. [C.Resp.Br.45-49].  As the government explained in responding to Defendants' similar arguments regarding their § 666 convictions, the "law of the case" doctrine on which Cromwell relies is no longer good law in the wake of the Supreme Court's decision in *Musacchio v. United States*, 577 U.S. 237 (2016).  Thus, it does not

---

[6]  Though Cromwell was convicted of a conspiracy to violate the Hobbs Act (Count 6s) in addition to the substantive counts, he makes no arguments specific to his conspiracy conviction.  He does not contend there was insufficient evidence of the conspiracy elements of the offense or that the evidence of a quid pro quo for the First through Fourth Checks was insufficient for any reason other than his arguments regarding the Fifth Check, the Bowflex, and the Hotel Stay.

matter if the government acquiesced in jury instructions that set a higher standard; the statute itself sets the baseline for sufficiency review. [G.Br.32]. Furthermore, though it should make no difference either way, Cromwell is mistaken in claiming the government "specifically requested" an instruction applying *McCormick* regardless of whether the jury found the payments were campaign contributions. [C.Resp.Br.24, 47]. To the contrary, the government requested, and the court gave, an instruction that the *McCormick* standard applied *if the jury found the payments were campaign contributions*. [*See* JA.1337, 1832 ("In particular, if you determine . . . that Mr. DeQuattro's payments to Mr. Cromwell . . . were for example political campaign contributions . . . , then the government must prove that those contributions were made in exchange for an agreement, which need not be explicit, but must be established clearly and unequivocally beyond a reasonable doubt, that Mr. Cromwell would perform or not perform a specific official act.")].[7]

Cromwell's suggestion that the government "waived" for lack of development its argument for why this Court must assume in its review that RGB's payments were not campaign contributions is without foundation. [C.Resp.Br.47]. For one

---

[7] Though it is true the jury instructions also included, without objection from the government, other statements requiring a "clear and unequivocal" agreement that were not expressly contingent on finding the payments were campaign contributions [*see* JA.1314, 1352, 1815, 1830], the whole point of *Musacchio* is that this fact is *irrelevant* when it comes to sufficiency review. The Supreme Court said it plainly: "The Government's failure to object to the heightened jury instruction [] does not affect the court's review for sufficiency of the evidence." 577 U.S. at 244.

thing, the government logically could not have waived any sufficiency arguments regarding Cromwell's *Hobbs Act* convictions through its principal brief, because Cromwell has raised this issue as an alternative ground for affirmance in *response* to that brief. *See infra* pp. 14-15. For another, and more importantly, the government's argument on this head was not undeveloped—it was just *simple*. [G.Br.32-33]. To wit, because the evidence was more than sufficient to prove the payments were not campaign contributions [*e.g.*, G.Br.9-11, 13, 21, 25, 30-31], "viewing the evidence in the light most favorable to the prosecution" requires assuming they were not, which makes the *McCormick* standard legally inapplicable. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). *Cf. Griffin v. United States*, 502 U.S. 46, 59 (1991) (a general verdict must be affirmed over an insufficiency challenge where two theories were presented, and the evidence was sufficient for at least one).

Cromwell's suggestion that *McCormick* applies whenever someone *calls* a payment a "campaign contribution" regardless of whether it *is* one in reality is categorically wrong. [C.Resp.Br.47-48].[8] The evidence showed that Cromwell spent the money from the First through Fifth Checks on himself, and Defendants never claimed that the Bowflex or the Hotel Stay were campaign-related. [*E.g.*,

---

[8] That the district court at one point expressed the view, based on DeQuattro's pre-trial claim that *he thought* he was making campaign contributions, that campaign contributions were "core" to the case has nothing to do with whether the evidence was sufficient to show the payments were not, in fact, campaign contributions. [C.Resp.Br.48 n.13 (citing JA.742); *see, e.g.*, JA.1147-53].

G.Br.9-15, 24-26, 30-31]. *McCormick* itself states that the heightened standard does not apply where the jury finds the "payment at issue was not a campaign contribution at all." 500 U.S. at 274. [*See* G.Br.33]. *United States v. D'Amico* is not to the contrary. [C.Resp.Br.46-47]. The Court's reference there to payments "tak[ing] the form of a campaign contribution" concerned the use of real campaign contributions to bribe officials, not someone merely calling payments "campaign contributions" as a cover story when they are, in fact, personal payments. *United States v. D'Amico*, 496 F.3d 95, 102 (1st Cir. 2007), *judgment vacated*, 552 U.S. 1173 (2008), *and relevant part of opinion reinstated*, *United States v. D'Amico*, No. 05-1468 (1st Cir. June 17, 2008). That is why the Court in that case went on to acknowledge the government's point that *McCormick* should not apply because "there was evidence from which a jury could conclude that," contrary to the defendant's claim, the payment "was not a campaign contribution" (though the Court ultimately concluded it could not disregard *McCormick* despite the evidence because of its pre-*Musacchio* "law of the case" doctrine).[9] *Id.* at 101-02.

---

[9] The legal landscape has changed since *D'Amico* in another way, as well. When the Court decided *D'Amico*, there was a view that only Hobbs Act cases involving campaign contributions (*i.e.*, those governed by *McCormick*) required proof of a quid pro quo *at all*, as the Supreme Court had left open that possibility in *Evans. See Turner*, 684 F.3d at 253-54. Though this Court has yet to expressly so hold, *McDonnell v. United States* can be read as closing that door and requiring a quid pro quo in all Hobbs Act cases. 579 U.S. 550, 572 (2016). The parties' *McCormick* dispute here is thus limited to whether the heightened quid-pro-quo standard of that case, as opposed to an ordinary quid-pro-quo standard, should apply.

Second, the government does not dispute that the Hobbs Act, unlike § 666 [G.Br.33], requires proof of an "official act" essentially as stated in *McDonnell v. United States*, 579 U.S. 550 (2016).[10] Indeed this is why the government acquiesced to the court instructing the jury on the *McDonnell* standard generally even though it does not apply to § 666: to avoid confusing the jury by giving two different standards for the parallel Hobbs Act and § 666 charges. The "official act" standard provides no help to Cromwell, though, because as explained in the government's principal brief, the trial evidence was sufficient to establish a *McDonnell* "official act." [*See* G.Br.36-37]. Just as *McDonnell* requires, the evidence showed that the fate of the RGB Contract was a "specific and focused" matter involving "a formal exercise of governmental power" that could "by law be brought" before the officials on the Gaming Authority board. *See McDonnell*, 579 U.S. at 574.

---

[10] Strictly speaking, *McDonnell* was interpreting the "official act" language in § 201, which is not part of the Hobbs Act. 579 U.S. at 563. Nevertheless, in the interest of avoiding the constitutional concerns the Supreme Court expressed in that case with a broader interpretation of the Hobbs Act, *see id.* at 575-80, the government does not dispute that it must prove the general parameters of a *McDonnell* "official act" under the Hobbs Act.

## II. THE COURT SHOULD REVERSE THE DISTRICT COURT'S RULING THAT TRIBAL OFFICIALS ARE NOT "PUBLIC OFFICIAL[S]" UNDER USSG § 2C1.1

### A.    <u>Two Procedural Matters</u>

The government first clarifies two procedural matters.

First, any suggestion the government "waived" its sentencing appeal due to a lack of "developed argumentation" is baseless. [C.Resp.Br.50; D.Resp.Br.51]. As the government explained in its principal brief, because the "reason" for the district court's sentencing rulings was the "same" as the reason for its Hobbs Act ruling [JA.2066],[11] the government's arguments for reversal were likewise the same. [G.Br.86 (incorporating by reference the arguments in "Section VI(C)" of the brief)]. The government accordingly cross-referenced its Hobbs Act arguments in its sentencing claim rather than repeating those arguments. This is concision, not a failure of argumentation. Indeed, Cromwell uses the identical technique in his responsive brief to incorporate his Hobbs Act arguments into his sentencing response. [C.Resp.Br.50].

The fact that the government did not "attempt" in its principal brief "to respond to the various arguments raised by the defense below on this issue" is plainly

---

[11] Though the district court misspoke and referenced "666(a)" here rather than the "Hobbs Act," what it meant to say is clear from context, as the court had just a few minutes earlier used the same purported "clear statement" requirement to grant a judgment of acquittal on Cromwell's Hobbs Act convictions.

not a waiver either. [D.Resp.Br.51; *see* C.Resp.Br.49]. An appellant's task in the opening brief is to address any ground on which the district court relied for its ruling and explain why it was error. *Cf. Sparkle Hill, Inc. v. Interstate Mat Corp.*, 788 F.3d 25, 29 (1st Cir. 2015). By contrast, the appellant is not obligated to predict and preemptively refute the appellee's arguments for affirmance on alternative grounds on which the district court did not rely. *See id.*; *Warmenhoven v. NetApp, Inc.*, 13 F.4th 717, 728-29 (9th Cir. 2021) (deeming "groundless" any contention that an appellant "waive[s]" his response to an argument for "affirmance of the district court's judgment on a ground not reached by the district court . . . by not anticipating it in his initial brief."). *Cf. In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 779 F.3d 34, 39 n.2 (1st Cir. 2015) (indicating that appellants should have addressed the issue "properly raised" by the appellee "as an alternative ground for affirmance" in "their reply [brief]").

Second, it is settled that the Court reviews "the legal determination of [a] guideline's meaning and scope de novo," *United States v. Luna-Diaz*, 222 F.3d 1, 3 (1st Cir. 2000), not for "abuse of discretion," as DeQuattro claims. [D.Resp.Br.51]. Whether Cromwell's factually undisputed position as the elected Chair of the Tribe made him a "public official" and an "elected public official" under the guideline is not a "judgment call"; it is a question of law. *Cf. United States v. Coleman*, 854 F.3d 81, 84-85 (1st Cir. 2017) (identifying certain procedural sentencing errors that *are*

"judgment calls," such as how the court "consider[s] the section 3553(a) factors" and how it "explain[s] the chosen sentence").

## B.     Defendants' Asserted Alternative Grounds for Affirming the District Court's Sentencing Rulings Are Unpersuasive

Having completely abandoned the district court's rationale,[12] Defendants offer several alternative grounds for affirming the court's ruling that a tribal official is not a "public official" under USSG § 2C1.1.  None of their arguments work.

Defendants state that a Native American tribe is not a "public" and tribal officials are not "public officials" because only certain people can be part of a tribe (*i.e.*, it does not reflect the "public at large") and membership is "voluntary." [C.Resp.Br.49-50; D.Resp.Br.52].  As explained above, these attributes do not change the fact that an official of a federally recognized tribe—which, again, is a sovereign community run by what is "indisputably" a "government"—falls comfortably and unambiguously within the ordinary meaning of a "public official." *See supra* pp. 7-8.  As the issue is not ambiguous, the "rule of lenity" plays no role. [C.Resp.Br.57].  *See Pulsifer*, 2024 WL 1120879, at *14.

Defendants' untenable position becomes unthinkable when considered in light of the commentary to the guideline, which Defendants have not disputed is

---

[12]     DeQuattro does not mention the district court's "sovereign immunity" rationale in his brief at all.  As discussed above, Cromwell has likewise abandoned the district court's reasoning.  *See supra* note 2.

"authoritative" on this issue. *See United States v. Soto-Rivera*, 811 F.3d 53, 59 (1st Cir. 2016) (guideline commentary "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, th[e] [G]uideline" (quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993))). That commentary not only states that the term "'public official' shall be construed broadly," § 2C1.1 cmt. n.1, it also then proceeds to "rattle[] off" a definition of the term that—like the definition of "governmental unit" in the Bankruptcy Code— "exudes comprehensiveness from beginning to end," including concluding with several "broad catchall phrase[s]," *Coughlin*, 599 U.S. at 388-89. *See* § 2C1.1 cmt. n.1(E) (stating as a catch-all that the term "public official" includes all people not already covered who were "in a position of public trust with official responsibility for carrying out a government program or policy," who "act[ed] under color of law or official right," or who had "de facto authority to make governmental decisions"). Given that the Supreme Court has found this type of "all-encompassing" definition sufficient to sweep in tribal governments where a clear-statement rule *does* apply, *see Coughlin*, 599 U.S. at 389, 399, the similarly wide-ranging definition of "public official" in § 2C1.1 must be broad enough to reach tribal officials where a clear-statement rule *does not* apply. [*See* G.Br.86].

DeQuattro's citation to the commentary to a different guideline does not support his point. [D.Resp.Br.52]. The language he quotes just implies that certain

17

officials are "public officials" under § 2C1.1. *See* § 2B4.1 cmt n.1 ("This guideline covers commercial bribery offenses and kickbacks that do not involve officials of federal, state, or local government, foreign governments, or public international organizations. See [§ 2C1.1] if any such officials are involved."). It does not purport to be an exhaustive list of such officials, and even if it did, it obviously cannot override (and thereby render partially ineffective) § 2C1.1's own definitional commentary.

DeQuattro offers two additional alternative arguments. He asserts his offense did not "involve[] an elected public official" under § 2C1.1(b)(3) because he was allegedly trying to influence Cromwell in his capacity as the President of the Gaming Authority, which is not an "elected" position, rather than as the elected Chair of the Tribe. [D.Resp.Br.53]. This is a distinction without a difference. One becomes the President of the Gaming Authority by being elected the Chair of the Tribe. [JA.1445 ("[A]ny individual then duly serving as the Chairperson of the Tribal Council shall automatically serve as the President of the Board of Directors [of the Gaming Authority].")]. Moreover, the jury found, and the evidence was sufficient to show, that the casino contract "in connection with" which DeQuattro paid the bribes was the "business" of the *Tribe*, of which Cromwell was an "elected public official." [*See* G.Br.39-45]. DeQuattro's offense thus "involved an elected public official," triggering the enhancement. § 2C1.1(b)(3).

DeQuattro also asks the Court to find any error in calculating his guideline sentencing range ("GSR") "harmless." [D.Resp.Br.53-55]. The Court cannot do that under the law of this circuit. This Court will deem a guideline calculation error "harmless" *only* where the "sentencing court ma[de] clear that it would have entered the same sentence regardless of the Guidelines," *United States v. Ahmed*, 51 F.4th 12, 22 (1st Cir. 2022), such that the Court can be "certain" the error had no effect on the sentence, *United States v. McGhee*, 651 F.3d 153, 158-59 (1st Cir. 2011).

The standard for "certain[ty]" is a high one, and the record in this case does not even come close to meeting it. *Compare Ahmed*, 51 F.4th at 22 (error harmless where court said it "would impose the same sentence, even if the [GSR] had been reduced by [its] acceptance of [the guideline] argument that [it] ha[d] not accepted"), *and United States v. Ouellette*, 985 F.3d 107, 109-10 (1st Cir. 2021) (error harmless where court said it "would impose precisely the same sentence even if the applicable [GSR] would have been reduced by any or all of the objections made"), *with United States v. Alphas*, 785 F.3d 775, 780 (1st Cir. 2015) (error not harmless though the court imposed a significant variance and "stated that a lower GSR was 'unlikely' to result in a different sentence," because that was not the equivalent of a "categorical assurance" the sentence was unaffected by the error), *and McGhee*, 651 F.3d at 158-59 (error not harmless even though record suggested the "sentence might well

have been the same regardless," because it was not "clear" enough that the Court could be "certain").[13]

Here, the sentencing court merely said, in anticipation of its downward variance, that it was not a "slave to the guidelines," *i.e.*, that it would not necessarily impose a guidelines sentence. [JA.2135 ("I'm not . . . a slave to the guidelines. They provide some orientation[.]")]. The court then, in the other statements DeQuattro quotes, discussed the 18 U.S.C. § 3553(a) factors to justify the downward variance, as the court was required to do. [D.Resp.Br.53-54; JA.2135 ("I advert directly to the larger principles of sentencing, which are set forth in Section 3553.")]. The court never stated, or even implied, that it would have imposed the same sentence regardless of DeQuattro's GSR.

The new two-level downward adjustment for defendants with no criminal history points does not affect this analysis. [D.Br.Resp.55]. Even if that adjustment applies to DeQuattro, which the district court should determine in the first instance on remand, it cannot balance out the court's error in declining to apply a *four-level* enhancement. [G.Br.84-85 (citing § 2C1.1(b)(3))]. The court's error was not harmless, and resentencing is required.

---

[13]   The unpublished case DeQuattro cites, *United States v. Carmona*, 688 F. App'x 31, 34 (1st Cir. 2017) (unpub.), is not on point. [D.Resp.Br.53]. *Carmona* was on plain-error review, under which the appellant bears the burden of showing harm; in this case, DeQuattro as cross-appellee bears the burden of showing the error was harmless, which he has not done.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:    <u>/s/ *Karen L. Eisenstadt*</u>
Karen L. Eisenstadt
Assistant U.S. Attorney

## CERTIFICATE OF COMPLIANCE WITH
## Rule 32(a)

### Certificate of Compliance with Type-Volume Limit,
### Typeface Requirements, and Type-Style Requirements

1.  This brief complies with this Court's Briefing Order allowing the government to file a Reply Brief of no more than 6,500 words, because this brief contains 5,198 words, excluding the parts of the brief exempted by Fed. R. App. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Times New Roman 14 point, in Microsoft Word version 2019.

/s/ *Karen L. Eisenstadt*
Karen L. Eisenstadt
Assistant U.S. Attorney

Dated:  April 3, 2024

## <u>CERTIFICATE OF SERVICE</u>

   I, Karen L. Eisenstadt, Assistant U.S. Attorney, hereby certify that on April 3, 2024, I electronically served a copy of the foregoing document on the following registered participants of the CM/ECF system:

Martin G. Weinberg
20 Park Plaza, Suite 1000
Boston, MA 02116

Kimberly Homan
20 Park Plaza, Suite 1000
Boston, MA 02116

Michael Pabian, Esq.
Michael Pabian Law Office
20 Park Plaza, Suite 1000
Boston, MA 02116

Robert Hennessy
Schnipper Hennessy, PC
25 Bank Row, Suite 2S
Greenfield, MA 01301

         /s/ *Karen L. Eisenstadt*
         Karen L. Eisenstadt
         Assistant U.S. Attorney